(No. 18639.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CLIFFORD OLROYD, Plaintiff in Error.

*Opinion filed April 20, 1929—Rehearing denied June 6, 1929.*

THOMAS F. SMITH, and WILLIAM E. THOMSON, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, MYRON E. MILLS, State's Attorney, and ROY D. JOHNSON, for the People.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

Clifford Olroyd, plaintiff in error, was found guilty of rape by a jury in the circuit court of Cass county and his punishment was fixed at imprisonment in the penitentiary for the term of eleven years. Judgment and sentence were entered on the verdict, and he has sued out this writ of error for a review of the record.

The indictment contains six counts. The first four counts charge that plaintiff in error forcibly raped Marion Baldwin, naming the date. The charging part of the fifth count is that "one Clifford Olroyd, a male person over the age of seventeen years, late of said county and State aforesaid, then and there did feloniously and unlawfully carnally know and abuse the said Marion Baldwin, and the said Marion Baldwin not his wife and then and there an unmarried female under the age of sixteen years," etc. The sixth count charges that Clifford Olroyd, "a male person over the age of seventeen years, late of said county and State aforesaid, without force, then and there did feloniously and unlawfully have carnal knowledge of the person

of the said Marion Baldwin, not his wife, then and there an unmarried female under the age of sixteen years, to-wit, of the age of thirteen years," etc. At the conclusion of the evidence for the People the State's attorney entered a *nolle prosequi* as to the first four counts, and by their verdict the jury found plaintiff in error guilty as charged in the fifth and sixth counts of the indictment. It is contended by plaintiff in error that these counts are defective. The contention is that these last two counts do not allege in positive language that plaintiff in error was over the age of seventeen years and that complaining witness was not his wife and was a female person under the age of sixteen years.

The statute defining statutory rape is in this language: "Every male person of the age of seventeen years and upwards who shall have carnal knowledge of any female person under the age of sixteen years and not his wife, either with or without her consent, shall be adjudged to be guilty of the crime of rape: *Provided,* that in case the said parties shall be legally married to each other before conviction, any legal proceedings shall abate." (Laws of 1905, p. 193.)

An indictment for rape containing substantially the same character of defects and framed under the law of 1887 was held good and sufficient in the case of *Johnson* v. *People,* 202 Ill. 53. Since the indictment in this case states the offense substantially in the language of the statute of 1905, which is now in force, and the defendant was thereby informed of the nature of the charge against him, the objection to the indictment cannot be sustained. *Johnson* v. *People, supra; People* v. *Westerdahl,* 316 Ill. 86.

For the prosecution Marion Baldwin testified substantially as follows: At the time the offense against her was committed she lived with her parents in Cass county, about five miles south of the city of Virginia, on a farm adjoining the one on which plaintiff in error resided with his grandmother, Elizabeth Olroyd. She was thirteen years old on July 9, 1926. On the evening of July 19, 1926,

she met plaintiff in error about 9:00 o'clock at "the corner" by his previous request and rode with him in his automobile to the home of his grandmother, where he lived. His home is about a mile from her home. It took about ten minutes to drive to his home and there was no one else there when they arrived. After they had spent some time in the living room, talking and looking at pictures, they went into the bed-room and there had sexual intercourse about 10:30 o'clock P. M. After that happened she rode with plaintiff in error to the home of Matt Spicer to get plaintiff in error's grandmother and Mary Elliott. She and plaintiff in error did not go into the Spicer home. When they got to Spicer's place they called Mrs. Olroyd and Mary Elliott by blowing the horn and they came out and got into the car. They then immediately drove to Mrs. Olroyd's home. Plaintiff in error then took her (witness) to the "corner" and she got home about 1:00 o'clock. Her parents did not know that she was away from home that night. She got away from home that night by going through the back door. The only persons that she saw at Spicer's home on that night was plaintiff in error's grandmother and Mary Elliott. The only time that she ever had sexual intercourse with plaintiff in error occurred on that night. She was with him a couple of times before that night and once afterwards. She never had sexual intercourse with any other man. She was not the wife of plaintiff in error and was not married to anyone. The act of intercourse with plaintiff in error occurred in the county of Cass and State of Illinois, and she is positive that it occurred on Monday, July 19, 1926. Clifford Olroyd will be twenty-one years old October 2, 1927, according to the information he gave her.

The testimony of Everett E. Bacon, for the State, is in substance the following: He lived about two and one-half or three miles from the Olroyds and Baldwins in 1927. He had been acquainted with Clifford Olroyd about thir-

teen years and is also acquainted with Marion Baldwin. He had a conversation with plaintiff in error at the post-office in the spring of 1927, in which he told the witness that he had sexual intercourse with Marion and that he had been with her several times in the last year before that happened. He told the witness that he was willing to do his part. He would take the girl and marry her, and that was all he would do. Witness could not tell exactly when this conversation with plaintiff in error occurred, but that it was on Saturday night, while Marion was in the hospital after the child was born.

Myrtle E. Baldwin, mother of the prosecuting witness, testified that on the afternoon of July 19, 1926, she, her husband and two daughters were going home. They had been at a neighbor's house, where there was a threshing machine, and they stopped at plaintiff in error's home. While there she talked to Mrs. Olroyd, and plaintiff in error stood on the running-board of the car and talked to them all. There was no whispered conversation between him and Marion, her daughter. They left Olroyd's for home, did the housework and went to bed. Marion went to bed and witness did not see her again that night. If Marion left the house that night witness did not know it. There was nothing unusual about Marion's actions and she seemed to be in good health. Plaintiff in error had been at her home, but she would not call his coming there any manifestation that he was visiting Marion. She did not know that Marion was in the habit of meeting him. She never gave her consent for Marion to meet him. She further testified that Marion's baby was born in Springfield, at the hospital, on May 15, 1927, and that the child is still living.

Floyd Baldwin, father of Marion, testified that he did not know whether his daughter left the house on the night of July 19, 1926. He could not recall that date or any events that occurred on that date.

Plaintiff in error did not testify. Four witnesses, Freda Moss, grand-daughter of Elizabeth Olroyd, Rose Elliott, mother of Mary Elliott, Elizabeth Olroyd, grandmother of plaintiff in error, and Mary Elliott, testified that they and plaintiff in error were in Jacksonville, Illinois, on the evening of July 19, 1926. They left there about midnight and got back to the Olroyd place about 11:00 o'clock on the morning of July 20, 1926. They had supper in Jacksonville on the evening of July 19. They all came back from Jacksonville together in an automobile except Rose Elliott, who then lived in Jacksonville. Mary Elliott testified that she was not at the Spicer home on July 19, 1926. Mrs. Olroyd also testified that she was not at the Spicer home on July 19, 1926, and that she never rode in an automobile with the prosecuting witness on that date. She visited the Spicer home often. She and Mary Elliott were at the Spicer home on Wednesday, August 11, 1926, and helped cook for the men working there with the threshing machine. After the men quit working at the threshing machine she and Mary Elliott returned to her home. She was not asked and did not state how or with whom they returned from the Spicer home. Mrs. Spicer also testified that she did not recall any time in July, 1926, when Mrs. Olroyd and Mary Elliott were at her home.

The testimony of the above five witnesses is substantially all of the testimony introduced by the plaintiff in error. As will be noted, these witnesses do not really contradict the testimony of the prosecuting witness in any particular except as to her positive statement that the defendant's act of intercourse with her took place on July 19, 1926, and that they then drove to the Spicer home on that night for the purpose of taking Mary Elliott and Elizabeth Olroyd to Mrs. Olyrod's home. The testimony of Mrs. Olroyd is apparently to the effect that it was on August 11, 1926, that plaintiff in error and Marion Baldwin went after her and Mary Elliott to take them home. Her testimony

may be true in this particular, but if it is, it only tends to show that the prosecuting witness was mistaken when she testified that event took place on July 19, 1926. Mrs. Spicer's testimony to the effect that she did not see the prosecuting witness and plaintiff in error at her house on July 19, 1926, does not contradict the prosecuting witness, because she expressly stated that she did not go into the Spicer home on that night and did not see anyone there except Mrs. Olroyd and Mary Elliott, whom she and plaintiff in error took to the home of Mrs. Olroyd in an automobile. The proof in the record, therefore, furnished by the prosecuting witness and Everett E. Bacon, that the defendant committed the crime with which he is charged is not contradicted in any particular except as to the prosecuting witness' testimony as to the date on which it occurred. It cannot make any difference whether the crime was committed on July 19, 1926, or on August 11, 1926. The defendant was proved guilty beyond all reasonable doubt, and his guilt was admitted by his confession.

One of the contentions of plaintiff in error is that the court erred in overruling his motion for a continuance. In the bill of exceptions there is nothing to show that a motion for a continuance was made and nothing to show that a motion for a new trial was made. The clerk, in making up the transcript of the record, inserted the motions for a continuance and for a new trial as part of the common law record. These motions cannot be treated even as a part of the common law record, and the rulings on the motions cannot be considered by this court, as the only means for preserving such questions on review is by a bill of exceptions. *Call* v. *People*, 201 Ill. 499; *People* v. *Weston*, 236 id. 104; *People* v. *Gabrys*, 329 id. 101.

The court gave two instructions to the jury for the People to the effect (1) that in order to convict it was not necessary to prove that the offense, if committed, was committed on the date alleged in the indictment, but that it

was sufficient if it was proved, beyond a reasonable doubt, to have been committed within three years before the indictment was returned by the grand jury; (2) that if they believe from the evidence, beyond a reasonable doubt, that the prosecutrix gave birth to a child during the month of May, 1927, they might take such fact into consideration, along with all other facts and circumstances in evidence, in determining whether or not a crime was committed as alleged. The court also refused three instructions offered on behalf of plaintiff in error which directed the jury that the evidence of the prosecuting witness was that plaintiff in error had sexual intercourse with her on July 19, 1926, and at no other time, and that unless they believed, beyond a reasonable doubt, plaintiff in error had sexual intercourse with her on that date they should find him not guilty. Plaintiff in error contends that the giving of the two instructions for the People and the refusal to give any one of the three instructions offered on behalf of himself were prejudicial and reversible error.

It is the general rule of law that the date alleged in the indictment is not material, and that it is sufficient if the prosecution proves that the offense charged was committed at any time within the period of the Statute of Limitations and prior to the returning of the indictment, and in the ordinary case it is not error to so instruct the jury. (*People* v. *Davidson,* 240 Ill. 191; *People* v. *Poindexter,* 243 id. 68.) It is also true that in a prosecution for rape it is proper to show, as a corroborating circumstance of the testimony of the prosecuting witness, that a child was born to her within the normal period of gestation after the act testified to by her. (*People* v. *Findley,* 286 Ill. 368; *People* v. *Duncan,* 261 id. 339.) It is to be noted, however, that the fact of the birth of a child to the prosecuting witness is not of itself any evidence that the defendant is the father of the child, and the only reason why such evidence is admissible is to corroborate the statement

of the prosecuting witness that the act of sexual intercourse to which she testified took place at a certain time. (*People* v. *Boston,* 309 Ill. 77; *People* v. *Cassidy,* 283 id. 398; *Kevern* v. *People,* 224 id. 170.) In this case the prosecuting witness testified that she had sexual intercourse with plaintiff in error at one time, only, and that on July 19, 1926. The child was not born to her until the 15th day of May, 1927. It was not born within the normal period of gestation (280 days) after July 19, 1926, and the fact of its birth on May 15, 1927, could not corroborate her statement. There was no medical testimony whatever as to the period of gestation or as to the condition of the child when it was born, and under the circumstances of this case the giving of the People's second instruction was error. The only act of sexual intercourse testified to in this case by the prosecutrix was one of date July 19, 1926, and the fact of the birth of the child at the time aforesaid, 300 days after July 19, 1926, did not corroborate her or tend to corroborate her. It did, however, tend to corroborate the other showing in the record that the act was committed on August 11, 1926, 277 days before the child was born. It was not error for the court to refuse to give the three instructions offered by the defendant, as the State was not bound to prove the date alleged in the indictment, beyond a reasonable doubt, as the date the crime was committed, and might rely on the other showing in the record that it was committed on August 11, 1926. The error in giving instruction No. 2 for the People is not reversible error, as it could not have misled the jury when the testimony of the prosecuting witness was corroborated in every way except as to the date of the offense and by a confession of the defendant.

The judgment of the circuit court is affirmed.

*Judgment affirmed.*